UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LARRY SEAL | CIVIL ACTION |
| VERSUS | 14-245 |
| MAVERICK CLAIMS, LLC AND<br>JAY A. PELLEGRINI | SECTION "N" (1) |

## ORDER & REASONS

Now before the Court is Defendants Maverick Claims, LLC, ("Maverick") and Jay Pellegrini's ("Pellegrini") Motion for Summary Judgment (Rec. Doc. 14). Plaintiff Larry Seal ("Seal") filed a response in opposition (Rec. Doc. 33). Defendants filed a reply (Rec. Doc. 37). Pursuant to a court order, Seal filed a sur-reply on the sole issue of prescription (Rec. Doc. 44). For the reasons stated herein, **IT IS ORDERED** that the Motion (Rec. Doc. 14) is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Seal's state law, constitutional, tort, and fraud claims, as well as his claim for retaliation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, are hereby **DISMISSED**. The motion is **DENIED** to the extent that Defendants assert Seal's remaining claim under ERISA, 29 U.S.C. § 1132, to recover benefits due and for failure to produce plan documents, is moot pursuant to Defendants' offer of judgment.

Specifically, the Court finds that Seal failed to dispute Defendants' calculations concerning the amounts owed for benefits he would have received under the Maverick Claims, LLC 401k Plan. As a result, the Court does not find a genuine issue of fact left to be decided as to this portion of

1

Seal's ERISA claim. Therefore, pursuant to Federal Rule of Civil Procedure 56(f)[1], the Court hereby places the parties on notice that summary judgment will be granted in Seal's favor in the amount of $107.92 plus any penalties[2] that the Court deems appropriate. Under Rule 56(f), the Court, after giving notice of its intent to enter summary judgment in favor of a nonmovant, must provide the parties with a reasonable time to respond. Accordingly, **IT IS FURTHER ORDERED** that the parties have **five days** from the date of this Order to raise any objection to the Court's grant of summary judgment for the Plaintiff and, in particular, to dispute its ruling as to the amount Seal would be entitled to receive had he been enrolled plus any penalties.

If the parties wish to contest summary judgment in Seal's favor, they must demonstrate sufficient evidence to create a genuine dispute of material fact such that the Court's grant of summary judgment under Rule 56(f) is inappropriate. Absent evidence to the contrary, the Court will rely on Defendants' calculations and enter judgment on those grounds. On the other hand, the Court finds that there is a genuine dispute as the total number of days that Defendants were in violation of the ERISA statute when calculating any potential penalties to be assessed by the Court. Consequently, the Court denies summary judgment on the issue of penalties.

**I. Background**

Plaintiff Larry Seal began working for Maverick on April 30, 2012. (Rec. Doc. 14-9 at p. 1). After being employed by Maverick for a period of ninety (90) days, Seal was notified that he

---

[1] Rule 56(f) provides: "after giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

[2] Under ERISA, penalties are assessed at the sole discretion of the Court. 29 U.S.C. § 1132(c)(1).

would be permitted to enroll in certain benefits provided by the company. Included in those benefits was the ability of qualified Maverick employees to participate in the company's 401k plan. (*Id.*). On July 26, 2012, after Seal received notice of his eligibility set to commence on August 1, 2012, Seal sent a request to Christie de Alminana, who assisted in the handling of benefits and hiring at Maverick, to produce the necessary plan documents and to enroll him in the plan. (*Id.*). Seal never received a response. (*Id.*). Seal sent a second request for plan documents and to be enrolled on August 1, 2012. Again, on August 7, 2012, Seal followed up on his request. (*Id.*). Five months later on January 8, 2013, Seal made a final request for plan documents. (*Id.*). The following day, Ms. de Alminana responded stating, "I'm so sorry[,] Larry... actually, the reasoning behind this is that we are discontinuing the current plan with John Hancock and are looking to join a different plan. As soon as I get the information on the new plan, I will be forwarding that information to you. (Rec. Doc. 32-4 at p. 8). Seal was never enrolled in Maverick's plan, nor did he receive any benefits. (Rec. Doc. 33-1 at p. 1).

Approximately two weeks later, on January 21, 2013, Maverick terminated Seal's employment. Seal filed the instant action on February 3, 2014, alleging breach of contract, tort, fraud, wrongful termination/retaliation, breach of civil rights, and constitutional violations against Maverick as well as against Pellegrini, president and part owner of Maverick, on the grounds that he is personally liable as the plan administrator. (Rec. Doc. 1).

## II. Law & Analysis

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is

determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could

or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### A. State Law Causes of Action

In their motion, Defendants argue that Seal's state law causes of action are preempted under ERISA and should be dismissed. (Rec. Doc. 14 at p.1). In his response, Seal does not address whether his breach of contract claim is preempted. Moreover, Seal does not present any arguments addressing whether his wrongful termination claim, to the extent that it was brought under state law, is preempted; however, Seal asserts that his claim survives as a retaliation action because ERISA,

specifically 29 U.S.C. § 1140, prohibits, among other actions, discharge of a plan participant for exercising any right to which he is entitled. (Rec. Doc. 33 at p. 11). In addition, Seal contends that his fraud claim is not preempted because his allegations are not "sufficiently connected" to a plan or plan terms for preemption to apply due to the fact that Seal was never permitted to enroll. (*Id.* at pp. 13-14).

ERISA provides that it "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). "A defendant pleading preemption must prove that: (1) the claim 'addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir.2004). In determining whether claims brought against an employer, who also acts as the plan administrator, are preempted, courts are directed to examine if the claims relate to the defendant's role as administrator of an ERISA-covered plan or do they relate to the defendant's role as simply an employer. *E.I. Dupont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 797 (5th Cir. 2008). In other words, are the claims brought in the context of plan administration or in some other capacity? *See Id.* at 799.

The Court finds that all of Seal's state law claims, including breach of contract, tort, fraud, and wrongful termination, are preempted by ERISA. The allegations contained in the Complaint

6

(Rec. Doc. 1) clearly relate to an employee benefit plan and, importantly, pertain to Defendants' roles in administering that plan. The Court cannot find any allegation that does not clearly concern Defendants' failure to enroll Seal in the 401k plan offered by Maverick or the company's failure to produce plan documents. Therefore, none of Seal's state law causes of action are sufficiently distinct to escape ERISA preemption under these circumstances. Accordingly, Seal's state law claims are dismissed.[3] The Court will address Seal's alternative claim of retaliation in violation of ERISA

---

[3] Seal's claim for fraud and deceit concerns allegations that a secret "John Hancock Plan" exists and Defendants have conspired to conceal plan documents because it is confidential and irrelevant. Seal bases his fraud allegations on a single email from Ms. de Alminana in which she references the discontinuance of the "plan with John Hancock." (Rec. Doc. 33-1 at p. 1). Seal has not offered any other evidence indicating that such a plan exists. To the contrary, Defendants have affirmatively stated on the record that there is no "John Hancock Plan." (Rec. Doc. 37 at p. 4). Moreover, Defendants have provided plan documents pursuant to the Maverick Claims, LLC 401k Plan and a sworn declaration from Patricia Monju, representative of third party administrator, Fox-Everett, Inc. ("Fox-Everett"), stating that Fox-Everett maintained the Maverick Claims, LLC 401k Plan during the time of Seal's employment. (Rec. Doc. 14-1, 14-2, 14-3, 14-4, 14-5). Monju's declaration also included an attachment indicating John Hancock's role as custodian of funds within the Maverick Claims, LLC 401k Plan. (Rec. Doc. 14-5 at p. 13). In addition, the Court notes that, repeatedly, during the course of Pellegrini's deposition, defense counsel and Pellegrini represented to Seal's attorney that they have produced all 401k plan documents in their possession. Seal relies on an excerpt from Pellegrini's deposition that is taken out of context to support the existence of a "John Hancock Plan." However, considering the deposition in its entirety, the Court finds that Pellegrini has no knowledge as to the existence of a "John Hancock Plan." Therefore, even if the Court were to entertain Seal's claim of fraud under state law, the Court finds that Seal has not presented sufficient evidence to find that any fraud occurred because there is no evidence to support a finding that a "John Hancock Plan" exists, save an ambiguous email referenced above.

Seal's allegations are conclusory and are not based on the evidence in the record. Defendants have represented to the Court that they attempted to remedy any confusion as to the existence of a "John Hancock Plan." Yet, Seal continues to rely on the non-production of "John Hancock Plan" documents as grounds for relief based on some suspected conspiracy that the company allegedly employed against Seal. Based on the facts in evidence, Seal's claim is not only unsupported, it is also implausible. The Court also finds much of Seal's opposition is most likely based on a misunderstanding as to the meaning of Ms. de Alminana's email. Notably, she and others with knowledge of Maverick's benefits structure were offered for deposition. However, Seal never deposed any of those people. Moreover, no subpoenas to John Hancock or other potential custodians of such information have been sought or served. Seal relies merely on

below.

### B. Constitutional and Civil Rights Violations

Defendants aver that Seal's allegations of civil rights and/or constitutional violations should be dismissed because neither Maverick nor Pellegrini are state actors. (Rec. Doc. 14). Although the Complaint explicitly references "breach of constitutional rights" and "breach of civil rights" as claims for damages, Seal fails to indicate which particular rights were violated. (Rec. Doc. 1 at p. 4). The Court is unclear as to whether these allegation were mistakenly included in the Complaint in the first place, as the Complaint does reference any facts that would give rise to such violations. Even so, Seal does not contest or offer any argument relating to the dismissal of these claims in his response in opposition. Therefore, the Court finds that Seal has conceded summary judgment on any alleged civil rights or constitutional claims. Moreover, the Court agrees with Defendants and finds that Seal cannot establish a civil rights or constitutional violation under these facts. Accordingly, these claims are hereby dismissed.

### C. Retaliation

Defendants initially argued, in their motion, that Seal's wrongful termination claim was preempted under ERISA. (Rec. Doc. 14). In his response, Seal contends that the claim is not

---

the existence of the de Alminana email as the basis for his conspiracy, without more. The burden in the case rests with the Plaintiff, and he has failed to show that his claim has any basis in fact.

Finally, to the extent that Seal's fraud claim consists of an allegation that Maverick misrepresented that fact that Seal would be entitled to matching contributions, the Court finds this claim unsupported as well. In particular, Najolia sent Seal an email, at the time he became eligible to enroll, stating that matching contributions were discretionary and not guaranteed. Similarly, Monju declared that no matching contributions were made by Maverick during the time Seal was employed. Therefore, the Court finds no evidence of fraud under these circumstances.

8

preempted because ERISA provides for a federal cause of action, which explicitly prohibits discharge of an employee in retaliation for exercising his rights under the statute. (Rec. Doc. 33 at p. 11)  In their reply, Defendants aver that this is the first time that Seal indicated an intent pursue a claim under the ERISA retaliation statute, 29 U.S.C. §1140; however that claim, too, fails because (1) it is untimely, (2) Seal was terminated for being ineffective in his position, not in retaliation for exercising his rights under the plan, and (3) Joby Najolia, Seal's manager and part owner of Maverick, did not know of Seal's requests for documents when he decided to terminate Seal; therefore, Seal cannot show discriminatory intent. (Rec. Doc. 37 at p. 9).  Seal argues in his sur-reply that his claim under 29 U.S.C. § 1140 is timely, and, in the alternative, Defendants' statute of limitations defense has been waived under the Federal Rules of Civil Procedure due to the fact that Defendants failed to raise it as an affirmative defense in their Answer. (Rec. Doc. 44).

### 1. Waiver

Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including ... statute of limitations." If the affirmative defense is not included in the complaint, it is waived. *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 198 (5th Cir. 1991).  In the alternative, courts have found that an affirmative defense is not waived if it is raised at a "pragmatically sufficient" time and the plaintiff was not prejudiced in his ability to respond. *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986).

The Court finds that Defendants' affirmative defense has not been waived.  Although the issue of prescription was only first raised by Defendants in their reply (Rec. Doc. 37) filed on June 5, 2015, the Court afforded Seal adequate time to file his sur-reply and contest any of the arguments

raised therein. Therefore, the Court finds that the defense was raised at a pragmatically sufficient time and that Seal was not prejudiced by the late notice given that the Court permitted Seal to respond. Thus, the Court will address the issue of prescription.

### 2. Prescription

Defendants contend that ERISA does not provide for a statute of limitations; hence, Louisiana's one-year prescriptive period for wrongful termination is applicable. (Rec. Doc. 37 at p. 8). In opposition, Seal argues that the doctrine of *contra non valentem* applies here because Defendants concealed the existence of the "John Hancock Plan" and fraudulently failed to produce plan documents. (Rec. Doc. 44 at p. 10). Seal relies on the Louisiana Fourth Circuit case *Doskey v. Hebert*, 645 So.2d 674 (La. App. 4 Cir. 1994) to support his claim under the doctrine. In *Doskey*, the court looked to the following four categories to determine if tolling was appropriate: "(1) [w]here there is some legal cause which prevented the Courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) [w]here there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) [w]here the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) [w]here the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Id.* at 679. *Contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so. *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002) (internal citation omitted).

Seal primarily relies on the third category under the doctrine, which provides for tolling of the prescriptive period where the debtor has done something to prevent the filing of the action.

"This category has been applied to cases wherein defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other ill practices) which tend to hinder, impede, or prevent the plaintiff from asserting his cause of action, as long as plaintiff's delay in bringing suit is not willful or the result of his own negligence. *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 251-52.

The Court finds that the doctrine of *contra non valentem* does not apply to Seal's retaliation claim. As set forth above, the Court does not find that Defendants committed fraud in relation to an alleged "John Hancock Plan," because there is no evidence to suggest that it exists. Furthermore, there is no evidence that the Defendants engaged in any conduct that hindered, impeded, or prevented Seal from filing this action.[4] Seal was terminated on January 21, 2013. Seal filed suit on February 3, 2014. Therefore, the claim of retaliation is prescribed under Louisiana law, and the claim is hereby dismissed.

### 3. Substantive Claim

Even if Seal's retaliation claim was not time-barred, the Court finds that he has failed to allege sufficient facts to establish all of the elements of that claim. To make a valid claim of retaliation under ERISA, the plaintiff must show: "'(1) prohibited (adverse) employer action (2)

---

[4] Defendants argue that Seal's claim for penalties is untimely as well. In support of their assertion, Defendants contend that the court, in *Doucet v. Turner Industries, LLC*, 2013 WL 3059761, *1-2 (W.D.La. June 14, 2013), found a one-year prescriptive period applies to actions for penalties under § 1132(c). However, the Court is not convinced that the one-year limitations period applies to a claim for failure to produce plan documents and that the statute of limitations period may be substantially longer under Louisiana law. *Harrell v. Fidelity Sec. Life Ins. Co.*, 2008 WL 170269, *2 (E.D.La. Jan. 16, 2008); *Amat v. Seafarers Intern. Union*, 2002 WL 511540, *3 (E.D.La. Apr. 3, 2002) (applying a ten-year statute of limitations to claims for penalties under § 1132(c)). Therefore, the Court disagrees with the case cited by Defendants and finds the Louisiana ten-year prescriptive period to be appropriate for a claim for penalties based on these facts.

taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled' or may become entitled." *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003) (internal citation omitted). "An essential element of a Section 510 claim is proof of defendant's specific discriminatory intent." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001). Once the plaintiff makes a prima facie showing, a presumption of discrimination is created, and the defendant must articulate a legitimate nondiscriminatory reason for its conduct. *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997). If the defendant can show a legitimate nondiscriminatory reason for the action, the burden will shift back to the plaintiff to prove pretext. *Id.*

After reviewing the relevant record and the parties' pleadings, the Court has not been presented with sufficient evidence to find any discriminatory intent under the circumstances. Seal has not put forth any substantiated evidence, other than the coincidental timing of his termination, demonstrating that he was fired for exercising his rights to access the benefits of the Maverick Claims, LLC 401k Plan. Moreover, Defendants produced the testimony of Joby Najolia indicating that he had no knowledge of Seal's request to be enrolled in the plan when he terminated Seal. Without notice of Seal's repeated requests, the decision to terminate Seal could not have been based on a desire to discriminate against him for asserting his rights under the plan. Based on these facts, Seal cannot show discriminatory intent.

What's more, Defendants offered Seal's Termination Notice (Rec. Doc. 37-3 at p. 11) – demonstrating that Seal was terminated because he was not producing any new business in the Florida market – as evidence of a legitimate, nondiscriminatory justification for Seal's termination. However, Seal fails to provide any evidence indicating that this nondiscriminatory reason was

pretext. Accordingly, the Court finds that Seal has failed to meet his burden of establishing a prima facie retaliation claim in addition to his failure to show pretext, and the claim is hereby dismissed.

### D. ERISA Benefits & Penalties

At this juncture, the Court acknowledges that the parties' arguments significantly diverge on the issue of ERISA benefits and penalties. Defendants claim that they have determined the maximum amount to which Seal would be entitled had he been enrolled in the Maverick Claims, LLC 401k Plan. Defendants also assert that no "John Hancock Plan" exists. On the other hand, Seal's opposition exclusively relies on the existence of the alleged "John Hancock Plan" when discussing the issue of benefits and penalties. Seemingly, Seal has not offered any calculations of his own to counter those proposed by Defendants because he does not have the appropriate John Hancock Plan documentation. Similarly, Seal bases his claim for penalties on assumption that Defendants never produced "John Hancock Plan" documents; hence, penalties, in an amount exceeding $120,000, continue to accrue. In essence, the Court has been presented with entirely distinct sets of arguments and factual scenarios based on two separate benefit plans. However, as seen above, Seal fails to present any evidence demonstrating that a "John Hancock Plan" exists. Therefore, the Court finds that Defendants have presented the only plausible interpretation of the facts, and the Court finds that no genuine dispute of fact exists as to the validity of the Maverick Claims, LLC 401k Plan. Accordingly, the Court, after providing the parties a reasonable opportunity to respond, will enter summary judgment in Seal's favor based on the following findings.

#### 1. Benefits

Defendants made an offer of judgment of $500 to Seal, which, Defendants aver, would

constitute five times the amount to which Seal was entitled. The offer is based on Patricia Monju's calculation, totaling $107.92, that Seal would have received had he been properly enrolled in the Maverick Claims, LLC 401k Plan. Believing that a "John Hancock Plan" existed and was being fraudulently concealed, Seal declined the offer. On April 10, 2015, Defendants made a second offer of judgment in the amount of $15,620 and $1,500 for reasonable attorney's fees. This amount included the original $107.92 for benefits owed, as well as an additional daily penalty amount that of $110 per day, the statutory maximum penalty, from the date Seal became eligible to receive benefits, to the date of termination. Defendants argue that the second offer affords Seal complete relief on all claim, and, therefore, his claims should be dismissed as moot.

In response, Seal argues that the offer of judgment does not moot his claim because Defendants still have not produced the "John Hancock Plan" documents, therefore, penalties should continue to accrue beyond his termination, amounting to 1,124 days and counting[5]. (Rec. Doc. 33 at p.18). As the Court previously stated, there is insufficient evidence to find that a "John Hancock Plan" exists. Therefore, Seal is not entitled to any ERISA benefits or penalties on those grounds. Nonetheless, it is undisputed that Seal was eligible to enroll in the Maverick Claims, LLC 401k Plan, yet he was never enrolled. It is also undisputed that Seal requested plan documents on four occasions, but Maverick never responded to any of those requests. Therefore, the Court finds that Seal is entitled to recover the amount of benefits he would have received had he been properly and timely enrolled in the Maverick Claims, LLC 401k Plan.

ERISA provides that a participant or beneficiary may bring suit "(A) for the relief provided

---

[5] This amount was determined as of the filing of Seal's response in opposition on May 26, 2015.

for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1). Notably, Seal does not contest the amount of $107.92 proposed by Defendants, presumably acting under the mistaken belief that he is entitled to recover under a fictitious "John Hancock Plan." Absent contradictory evidence as to the calculations offered by Defendants, the Court finds that the Seal is entitled to $107.92 in unreceived benefits.[6]

The Court must next determine whether the ERISA civil penalty for failing to produce requested plan documents is appropriate under the circumstances. Section 1132(c) states:

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100[7] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1). "In making this determination, the district court should consider the administrator's reasons for refusing to provide the information." *Abraham v. Exxon Corporation*,

---

[6] As stated herein, the Court has provided the parties an opportunity to respond and contest summary judgment in Seal's favor.

[7] The amount has since been adjusted for inflation to $110 per day by the U.S. Department of Labor. 29 C.F.R. Part. 2575.

85 F.3d 1126, 1129 (5th Cir.1996). The court may also consider any prejudice caused by the administrator's failure to respond. *See Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 362 (5th Cir.). However, "even in the absence of a showing of prejudice to the plan participant or bad faith on the part of the administrator, the district court may impose the statutory maximum penalty." *Tait v. Barbknecht & Tait Profit Sharing Plan*, 997 F.Supp. 763, 773 (N.D.Tex. Dec. 22, 1997).

The Court notes that, Maverick, on four occasions, failed to produce plan documents to its employee. Even more surprising, following a request for plan documents by Seal's attorney on October 22, 2013, Maverick again failed to produce the requested information. Defendants have not offered any justifiable reason for the repeated lack of response. Based on these facts, the Court finds that penalties are appropriate here. Subsequently, the Court must determine the amount to be assessed and the total number of days that Defendants were in violation of the statute.

In refusing the offer of judgment, Seal asserts that he is entitled to penalties beyond the dates of his employment. On the other hand, although Defendants challenge the assessment of penalties in any amount, they argue, in the alternative, that penalties should only be assessed from the date Seal became eligible to enroll to the date of Seal's termination. However, the Court has not been presented with, nor has it found through its own research, any case law to support a finding that the penalty ceases to accrue upon termination. Even though Seal's assertion that he is entitled to penalties up to the present date is erroneously grounded in the existence of a "John Hancock Plan," the Court finds that he may be entitled to penalties ranging from the date he became eligible to enroll in the Maverick Claims, LLC 401k Plan to the date that Defendants finally produced that plan's appropriate documentation. Therefore, the Court is not convinced that Seal's claim is mooted by

Defendants' offer of judgment in the amount of $15,620.

In this regard, the Court finds that there is conflicting evidence in the record as to when Defendants produced the requested documentation. [*See* Rec. Doc. 33-1 at p. 3 (indicating that plan documents were produced on October 23, 2014) and Rec. Doc. 37-1 (indicating production of plan summary documents on August 13, 2014)]. Assuming that Defendants did not fully comply with the ERISA disclosure requirements until October 23, 2014, the maximum amount of penalties to which Seal could be entitled under the statute is $86,130[8]. However, the Court notes that the general trend, when assessing penalties for failure to produce plan documents following repeated requests for documents, absent bad faith, is to limit the statutory daily penalty to an amount well below the maximum. *See McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 163 (2d Cir. 2003) (upholding the district court's discretionary penalty to $15/day), *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994) (affirming the court's assessment of $30/day). Nevertheless, the Court does not find that summary judgment is appropriate on the matter of penalties due to the fact that the record does not clearly establish the appropriate date on which Defendants produced the required materials.

Accordingly, the Court, absent evidence to the contrary, will enter summary judgment in Seal's favor pursuant to Rule 56(f) on the issue of benefits. The issue of penalties remains before the Court.

### 2. Personal Liability

---

[8] Calculated by totaling the number days from August 1, 2012, which is 30 days following the date Seal first became eligible, up to the date Defendants produced the plan on October 23, 2014, (783 days) and multiplying that number by the statutory maximum penalty of $110 per day.

Seal argues that Pellegrini is personally liable because he maintained "actual control" over the "John Hancock Plan" and continually refused to produce plan documents. (Rec. Doc. 33 at p. 17). As previously stated, the Court finds that there is insufficient evidence to establish that a "John Hancock Plan" exists. Quite obviously, Pellegrini could not exercise actual control over an illusory plan. Moreover, Pellegrini declared in his deposition that he has no personal knowledge as to the existence of a "John Hancock Plan." Considering the Maverick Claims, LLC 401k Plan, the record does not indicate that Pellegrini exercised any substantive control over it. And, the plan documents clearly identify Maverick as the "plan administrator." Accordingly, Seal has failed to show any evidence to support a claim that Pellegrini is personally liable for any ERISA benefits and/or penalties, and the remaining claim against him is hereby dismissed.

**III. Conclusion**

For the reasons stated herein, Seal's breach of contract, tort, fraud, wrongful termination, civil rights, constitutional, and ERISA retaliation claims are hereby **DISMISSED**. Summary Judgment is **DENIED** to the extent the remaining claim for ERISA benefits and penalties is mooted by Defendants' offer of judgment. The Court finds no genuine dispute as to the amounts Seal is entitled to recover under the Maverick Claims, LLC 401k Plan, and the Court will enter summary judgment in his favor in the amount of $107.92, absent valid objection during the allotted responsive period. The Court finds that penalties are appropriate under the circumstances but declines to enter judgment regarding the portion of the daily maximum to be assessed and total number days Defendants remained in violation due to the existence of disputed facts in the record.

New Orleans, Louisiana, this 24th day of July 2015.

**KURT D. ENGELHARDT**
**United States District Judge**

18